IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

KENNITH McDOWELL, et al.                                    PLAINTIFFS

vs.                Civil Case No. 4:08CV003979 HLJ

ELBERT PRICE, et al.                                        DEFENDANTS

ORDER

This is an action under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq.* The positions of the parties were outlined in the District Court's Order on July 10, 2009, denying Defendants' Motion to Dismiss. Now before the court, are the following motions: Plaintiffs' Second Motion Requesting Permission to Propound More Than Twenty-five Interrogatories (DE #99); Defendants' Motion for Protective Order (DE #126); Plaintiffs' Motion Requesting That Discovery Cover All Years, All Plans and All Employees From 1974 Forward (DE #128); Plaintiffs' Motion for an Order Compelling Disclosure, For Imposition of Sanctions and For an Expedit[]ed Ruling on Both Issues (DE #133); Plaintiffs' Motion to Compel Discovery- Interrogatories 1-16 and Requests for Production Nos. 1-68 (DE #161); Plaintiffs' Motion Asking That the Two Schwab Accounts Be Closed and the Proceeds Paid into the Registry of the Court or to an Independent Trustee Or, Alternatively, That the Defendants Be Removed as Entities Who Can Access the Accounts (DE #201); Plaintiffs' Motion Requesting the Closure of the Two Metropolitan Capital Management Accounts and Transfer of the Funds in Each to the Court or an Independent Financial Institution with

the Prices Having No Access to Said Accounts (DE #248); and Plaintiffs' Motion to Compel Discovery – to order Defendants to respond to Requests for Production Nos. 5 & 6 (DE #220). A hearing was held on March 11, 2010, and the parties submitted post-hearing briefs.

I.

Plaintiffs in this case seek an accounting of their interests in the Bud Price Excavating Service, Inc., Profit-Sharing Plan ("the Profit-Sharing Plan") and the Price Utility Contractors, Inc., Retirement Plan ("the Retirement Plan"), or "the Plans". At the hearing, Defendants presented the testimony of F. Wycliff Nesbit, Jr., an attorney with the Friday Law Firm, who is counsel for the Plans. Mr. Nesbit testified the Prices hired him after the previous attorney became embroiled in personal legal problems not involving these defendants. The defendants were being investigated by the Department of Labor (DOL), and Mr. Nesbit handled the matter for them. The DOL informed defendants what to do within a certain time frame in order to complete distributions from the Plans.

Mr. Nesbit hired Mr. James Turpin, an actuary, to calculate the distribution of the Retirement Plan, which he stated is typically done in calculating interests in a defined benefits plan. Mr. Nesbit received packets from Mr. Turpin and mailed those to the participants in the Plan, who were to complete benefit election forms and return them to him for processing. Plaintiffs did not return their forms. Mr. Nesbit testified actuaries compile data

about employees in defined benefit plans, including their age, date of birth, employment data, compensation, marital status, and any spouses' dates of birth, from which they make present value calculations.

Contributions to the Profit-Sharing Plan are allocated to eligible participants based on salary and years of employment, using a formula. No contributions to this plan have been made since 1999. In 1998, there was a rollover distribution of $2.9 million from the Retirement Plan. Mr. Nesbit received prior allocation statements prepared by Mr. Barry Jewell, the attorney who had previously administered the Plan; financial statements from Metropolitan National Bank, which used a Schwab account as the depository of the funds; and form 5500's. He could not reconcile the 5500's with the financial statements, and he and an accountant in his office eventually based the recalculations on the last ten years' financial statements. He stated the documents used in the recalculation of benefits were provided to Plaintiffs in the initial disclosures.

Plaintiffs presented the testimony of Mr. Scott Fletcher, an expert on defined contribution plans, which include profit-sharing plans and 401K's. He stated that defined contribution plans are sponsored by employers, who make yearly contributions, which are then invested. The gains/losses are allocated equally on an annual basis to participant accounts, as long as a participant has a balance in the plan.

Mr. Fletcher stated he would need data for all years relating to the Profit-Sharing Plan to calculate benefits for Plaintiffs, and

the 5500's indicate the plan started in 1974. The data required includes the Plan documents, payroll for the entire company, and listed assets and their historical transactions data, bank statements, annual trust statements, documentation regarding prior distributions, and corporate income tax returns showing the contributions made. He testified the payroll data would determine the amount of contribution each employee would receive. He stated he could not calculate benefits with only documents dated as of 1999. He also testified there is no residuary in a profit-sharing plan, unless there was an excess contribution that exceeded the IRS limits, but, even in such a case, the money would stay in the plan and would ultimately be allocated.

On cross-examination, Mr. Fletcher stated that, when he takes over the administration of an established plan, he takes the previous administrator's documents and goes forward from there. He does not ask for corporate tax returns or all plan records, but typically he gets an accounting and audited financials, because he needs a place to start. He had not been made aware of the recalculations done by the Friday Law Firm, and he was not aware of what documents they used, and he had not received any financial data, other than the 5500's through 2006. He also stated his answers were based on the assumption there were no records or calculations in existence and he was asked to personally calculate benefits, and if he had records of recalculations and there was no reasonable dispute, he would rely on those.

Plaintiffs also presented the testimony of Mr. David Kays, an expert on defined benefit plans, such as the Retirement Plan in this case, which defines what monthly benefit a participant will receive for the rest of his life. Counsel referred to documents she had interpreted as relating to six plans in addition to the Retirement Plan and the Profit-Sharing Plan. Mr. Kays explained that some of those documents are base documents that relate to the Plans at issue here.

He testified that benefits under the Retirement Plan would be calculated with a formula, which would use a certain percentage set out in the plan adoption agreement of five years' average pay and the number of years of service. He stated he would need the participants' five years of W-2's. He would not need any record of contributions to the Retirement Plan or any records of other employees.

He also testified that the Plan adoption agreement in this case used 45% in the formula, but Mr. Turpin used 39.5%, and he could not explain the discrepancy. He stated the parties would have to resolve that discrepancy, or agree on the percentage to be used in the calculations. He further stated that it appeared the Retirement Plan was frozen in 2003, and he would need the W-2's back five years from that date if the Plan was actually frozen. He testified a plan sponsor may change a plan at any time, but he must provide notice to the participants, and if there was no notice, there would be an issue of whether benefits continued to accrue.

5

II.

Plaintiffs have not explained why they should be allowed to propound more than twenty-five interrogatories (DE #99). Their argument in their brief (DE #100), focuses on the need for more documents and it is not clear how interrogatories would help them obtain these disputed documents. Plaintiff's Second Motion Requesting Permission to Propound More than Twenty-five Interrogatories (DE #99) will be denied at this time.

III.

Plaintiffs have also failed to establish sufficient basis for their Motion Asking That the Two Schwab Accounts Be Closed and the Proceeds Paid into the Registry of the Court or to an Independent Trustee Or, Alternatively, That the Defendants Be Removed as Entities Who Can Access the Accounts (DE #201), and their Motion Requesting the Closure of the Two Metropolitan Capital Management Accounts and Transfer of the Funds in Each to the Court or an Independent Financial Institution with the Prices Having No Access to Said Accounts (DE #248). These two motions will be denied.

IV.

The remaining motions, Defendants' Motion for a Protective Order (DE #126), Plaintiffs' Motion Requesting that Discovery Cover All Years, All Plans and All Employees from 1974 Forward (DE #128), Plaintiffs' Amended Motion for an Order Compelling Disclosure and for Imposition of Sanctions (DE #133), Plaintiffs' Motion to Compel

—Interrogatories 1-16 and Requests for Production NOS. 1-68 (DE #161), and Plaintiffs' Motion to Compel Discovery – to order Defendants to respond to Requests for Production Nos. 5 & 6 (DE #220) all relate to the parties' dispute regarding records of the Profit-Sharing Plan and the Retirement Plan dating from 1974 forward. I credit Mr. Kays' testimony that benefits for participants in the Retirement Plan may be calculated with a formula, using the participants' salary for the five years preceding the year the Retirement Plan was frozen (2003), and their employment records showing the number of years they worked at least 1000 hours, and that he would not need any record of contributions to the Retirement Plan or any records of other employees. Defendants provided relevant employee data for each of the seven Plaintiffs in its initial disclosures from 1997 to 2003, as evidenced by Exhibits 9 & 10 to Defendants' post-hearing brief. After examining those exhibits, if Plaintiffs do not understand the data, or contend those documents are incomplete, they may seek production of any missing W-2's for that period of time. In addition, Plaintiffs' own income tax records should provide some of this data.

It is not clear whether there is a dispute regarding the number of years worked by each of the Plaintiffs, information which also goes into the formula. If there is such a dispute as to any Plaintiff, both counsel are directed to exchange documentation supporting their positions regarding this issue.

Defendants' Motion for a Protective Order (DE #126) is granted as to the Retirement Plan, with the exception of missing W-2's and

documents supporting their position regarding any dispute as to the number of years worked by any of the Plaintiffs.  Plaintiffs' Motion Requesting That Discovery Cover All Years, All Plans and All Employees From 1974 Forward (DE #128); Plaintiffs' Motion for an Order Compelling Disclosure, For Imposition of Sanctions and For an Expedit[]ed Ruling on Both Issues (DE #133);  Plaintiffs' Motion to Compel Discovery– Interrogatories 1-16 and Requests for Production Nos. 1-68 (DE #161); and Plaintiffs' Motion to Compel Discovery – to order Defendants to respond to Requests for Production Nos. 5 & 6 (DE #220) are all denied insofar as they relate to the Retirement Plan, with the exception of requests to produce missing W-2's and documents supporting their position regarding any dispute as to the number of years worked by any of the Plaintiffs.

   Mr. Kays also testified that the Retirement Plan adoption agreement in this case used 45% in the formula, but Mr. Turpin used 39.5%, and Mr. Kays could not explain the discrepancy.  He stated the parties would have to resolve that discrepancy, or agree on the percentage to be used in the calculations.  Plaintiffs may depose Mr. Turpin regarding this discrepancy.  If Defendants have not already done so, they are directed to provide Plaintiffs with a copy of the Retirement Plan adoption agreement; any other document that reflects the correct percentage to be used in the formula; and any document that reflects what percentage Mr. Turpin used in his calculations.

V.

The court understands Defendants' argument that the proper calculations were done for the ten-year period to calculate Plaintiffs' benefits under the Profit-Sharing Plan, and they gave all of the relevant documents supporting those calculations to Plaintiffs in the initial disclosures. However, Defendants have not explained why other financial records are not at least relevant to the issue of determining the proper amount of Plaintiffs' benefits under the Profit-Sharing Plan and should not be provided to Plaintiffs under the rules of discovery. Defendants are directed to provide Plaintiffs with the Profit-Sharing Plan documents, including the summary plan description, dating from 1974; payroll information for the entire company dating back to 1974, with personal information such as names and social security numbers redacted; assets and historical transactions data dating back to 1974 concerning any assets of the plan, including financial statements of the accounts in which the funds for the Profit-Sharing Plan have been held, interest income, and trust statements reflecting income and losses; any loan documents involving the plan; documents reflecting plan expenses from that same time period; and documentation of prior distributions. Plaintiffs did not show they are entitled to Defendants' corporate tax returns, and the request for those documents are denied. Plaintiffs' Motion Requesting That Discovery Cover All Years, All Plans and All Employees From 1974 Forward (DE #128); Plaintiffs' Motion for an Order Compelling Disclosure, For Imposition of Sanctions and For an Expedit[]ed Ruling on Both Issues (DE #133); Plaintiffs' Motion to Compel

Discovery– Interrogatories 1-16 and Requests for Production Nos. 1-68 (DE #161); and Plaintiffs' Motion to Compel Discovery – to order Defendants to respond to Requests for Production Nos. 5 & 6 (DE #220) are granted insofar as they request production of the above documents.  Plaintiffs' motions are denied insofar as they relate to other discovery requests.  Plaintiffs' request for sanctions is denied.

 IT IS THEREFOR ORDERED that Defendants' Motion for a Protective Order (DE #126) is granted in part and denied in part in accordance with this Order.

 IT IS FURTHER ORDERED that Plaintiffs' Motion Requesting That Discovery Cover All Years, All Plans and All Employees From 1974 Forward (DE #128); Plaintiffs' Motion for an Order Compelling Disclosure, For Imposition of Sanctions and For an Expedit[]ed Ruling on Both Issues (DE #133);  Plaintiffs' Motion to Compel Discovery– Interrogatories 1-16 and Requests for Production Nos. 1-68 (DE #161); and Plaintiffs' Motion to Compel Discovery – to order Defendants to respond to Requests for Production Nos. 5 & 6 (DE #220) are denied in part and granted in part in accordance with this Order.

 SO ORDERED this 16th day of April, 2010.

          \s\Henry L. Jones, Jr.
          United States Magistrate Judge