# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

KENNITH McDOWELL, ROBERT MAULDING,              **PLAINTIFFS**
LUTHER STRIPLING, RUDY KYLE, FRED DOLLAR,
JAMES JOSLIN, JAMES MILNER, JOE ELLIS,
DAVID ELLIS, DANIEL STRIPLING, and
JANET STRIPLING


v.             NO. 4:08CV03979 SWW/HDY


ELBERT PRICE, Individually and as Trustee for        **DEFENDANTS**
Bud Price's Excavating Service, Inc., Profit-Sharing
Plan; Bud Price's Excavating Service, Inc., Retirement
Plan; Price's Utility Contractors, Inc., Retirement
Plan; and six unnamed plans; **MARY RUTH PRICE**,
Individually and as Trustee for Bud Price's Excavating
Service, Inc., Profit-Sharing Plan; Bud Price's
Excavating Service, Inc., Retirement Plan; Price's
Utility Contractors, Inc., Retirement Plan; and six
unnamed plans; **BUD PRICE'S EXCAVATING SERVICE,
INC., PROFIT-SHARING PLAN; PRICE'S UTILITY
CONTRACTORS, INC., RETIREMENT PLAN; BUD PRICE'S
EXCAVATING SERVICE, INC., RETIREMENT PLAN;
SIX UNNAMED PLANS; PRICE'S UTILITY CONTRACTORS,
INC.**, as plan administrator for Price's Utility Contractors,
Inc., Retirement Plan, and six unnamed plans; and
**BUD PRICE'S EXCAVATING SERVICES, INC.**, as plan
administrator for Bud Price's Excavating Service, Inc.,
Profit-Sharing Plan; Bud Price's Excavating Service,
Inc., Retirement Plan; and six unnamed plans

ORDER

BACKGROUND.  The plaintiffs commenced the proceeding at bar pursuant to the provisions of the Employee Retirement Income Security Act in an attempt to, inter alia, obtain an accounting from a retirement plan and profit-sharing plan administered by their employers.  In the months that followed, several discovery disputes arose.  The resolution of the disputes was referred to United States Magistrate Judge Henry L. Jones, Jr.  On April 16, 2010, he entered an order addressing several of the disputes.  A review of his order is critical to resolving the dispute that has now arisen.

JUDGE JONES' APRIL 16, 2010, ORDER.  Judge Jones noted that the plans before him were the Price's Utility Contractors, Inc., Retirement Plan ("the **Retirement Plan**") and the Bud Price's Excavating Service, Inc., Profit-Sharing Plan ("the **Profit-Sharing Plan**").  With regard to the **Retirement Plan**, his order reflects the following:

(1) He credited the testimony of plaintiffs' expert, David Kays ("Kays"), who testified that benefits under the Retirement Plan could be calculated with a formula using "a certain percentage set out in the plan adoption agreement of five years' average pay and the number of years of service."  See Document 287 at 5.

(2) With regard to the percentage to be used in the formula, Judge Jones noted that a discrepancy existed between what the plan adoption agreement apparently provided, that being, forty-five percent, and what James Turpin ("Turpin"), an actuary, had apparently used in a previous calculation, that being, 39.5 percent.

(3) Judge Jones ordered the defendants to provide the plaintiffs with "a copy of the Retirement Plan adoption agreement, any other document that reflects the correct percentage to be used in the formula, and any document that reflects what percentage … Turpin used in his calculations," <u>see</u> Document 287 at 8, assuming that the defendants had not already provided those documents to the plaintiffs.

(4) With regard to the other components of the formula, Judge Jones credited Kays' testimony that the formula required evidence of "the participants' salary for the five years preceding the year the Retirement Plan was frozen (2003), and their employment records showing the number of years they worked at least 1000 hours, and that he would not need any record of contributions to the Retirement Plan or any records of other employees." <u>See</u> Document 287 at 7.[1]

(5) Judge Jones found that the defendants had "provided relevant employee data for each of the seven [p]laintiffs in its initial disclosures from 1997 to 2003, as evidenced by Exhibits 9 and 10 to [d]efendants' post-hearing brief." <u>See</u> Document 287 at 7.

(6) He then found the following: "After examining those exhibits, [by "exhibits," the Court understands Judge Jones to mean the employee data for each of the seven plaintiffs from 1997 to 2003], if the [p]laintiffs do not understand the data, or contend those documents are incomplete, they may seek production of any missing W-2's for that period of time." <u>See</u> Document 287 at 7.

---

[1] It appears that the Retirement Plan was "frozen" sometime in 2003.

(7) He additionally found that it was not clear whether there was a dispute as to the number of years worked by each plaintiff.  If so, he ordered the parties to exchange documentation supporting their positions regarding that issue.

(8) In summary, Judge Jones ordered the defendants to produce the following with regard to the **Retirement Plan**, assuming they had not already done so:

>(a) a copy of the Retirement Plan adoption agreement,

>(b) any document that reflects the correct percentage to be used in the formula,

>(c) any document that reflects what percentage Turpin used in his calculations,

>(d) any missing W-2s, and

>(e) any documents supporting the defendants' position regarding any dispute as to the number of years worked by any of the plaintiffs.

Judge Jones also addressed the **Profit-Sharing Plan** in his order.  With regard to that plan, his order reflects the following:

(A) He apparently credited the testimony of plaintiff's expert, Scott Fletcher, who testified that defined contributions plans, like the Profit-Sharing Plan, are sponsored by employers who make yearly contributions that are then invested.  Any gain or loss is allocated equally to the participants, as long as they have a balance in the plan.

(B) Judge Jones found that the defendants had performed a calculation of benefits and did so based on "the last ten years' financial statements." <u>See</u> Document 287 at 3. He appears to have credited the testimony of their expert that the documents used in the calculation had been provided to the plaintiffs in the initial disclosures.

(C) He nevertheless found that the defendants had not explained why "other financial records are not at least relevant to the issue of determining the proper amount of … benefits under the Profit-Sharing Plan and should not be provided … under the rules of discovery." <u>See</u> Document 287 at 9.  He thus ordered their production.

(D) In summary, Judge Jones ordered the defendants to produce the following with regard to the **Profit-Sharing Plan**:

(1) profit-sharing plan documents, including the summary plan description dating back to 1974;

(2) payroll information for the entire company dating back to 1974, with personal information such as names and social security numbers redacted;

(3) assets and historical transactions dating back to 1974 concerning any assets of the plan, including financial statements of the accounts in which the funds for the Profit-Sharing Plan had been held, interest income, and trust statements reflecting income and losses;

-5-

(4) any loan documents involving the plan;

(5) document reflecting plan expenses from that same time period; and

(6) documentation of prior distributions.

**AMENDED COMPLAINT**.  On the heels of Judge Jones' order, the Magistrate Judge referral was changed.  The first act of the Court was, _inter alia_, to grant the plaintiffs' motion to amend.  In a subsequently filed amended complaint, the plaintiffs joined the Bud Price's Excavating Service, Inc., Retirement Plan and six unnamed plans.  To date, the plaintiffs have not identified the unnamed plans.

**THE MOTION FOR CONTEMPT**.  On June 7, 2010, the plaintiffs filed the pending motion requesting that "[the] defendants and their counsel be held in contempt."  See Document 307-1.  In the motion, the plaintiffs maintained that the defendants failed to fully comply with Judge Jones' order, and with an "oral directive" he made during a March 11, 2010, hearing.[2]  The plaintiffs asked that the defendants comply with the order, pay all costs, be fined, and be **incarcerated** until all discovery is produced.

_____

[2]

With regard to the "oral directive," the plaintiffs alleged the following:

The Court ordered [the d]efendants to provide "everything the calculations were based on, I mean that you have."  Ex. A.  This would include contributions to each of the three known plans and yet no proof of the contributions were provided.  The Court did not list contributions in its written order but [the p]laintiffs consider the Court's oral directive to be as binding as its written order.

See Document 308 at 2.

The defendants subsequently filed a three page response to the motion.  In the response, they first maintained that the motion should be denied solely because it does not comply with Local Rule 7.2(g).  Second, with regard to the "oral directive" made by Judge Jones, they maintained that there is no basis for such a contention.[3] Last, the defendants maintained that "[c]opies of all of the documents in [their] possession and copies of all of the documents necessary to calculate the plaintiffs' benefits have been provided to the plaintiffs along with the calculations made by the plan administrators." See Document 311 at 1.  They supported the last assertion with several specific examples.

The Court has now reviewed the pleadings and exhibits filed by the parties in support of, and in response to, the plaintiffs' motion.  It appears that the plaintiffs' assertions generally fall into one of the following four categories: (1) those associated with the Price's Utility Contractors, Inc., Retirement Plan, previously identified by Judge Jones as the Retirement Plan; (2) those associated with the Bud Price's Excavating Service, Inc., Profit-Sharing Plan, previously identified by Judge Jones as the Profit-Sharing Plan; (3) those associated with the Bud Price's Excavating Service, Inc., Retirement Plan; and (4) those associated with the six unnamed plans.  The Court will address each category separately.

---

[3]

The plaintiffs subsequently filed a reply to the defendants' response and an amended reply to the defendants' response.  See Documents 312 and 313.  For the sake of brevity, the Court will not attempt to summarize those submissions.

A. Local Rule 7.2(g).  As a preliminary matter, the defendants maintain that the plaintiff's motion should be denied solely because it does not comply with Local Rule 7.2(g).[4]  The plaintiffs maintain, in response, that the rule does not apply to their motion because it is neither a motion to compel nor a discovery-enforcement motion but is instead a motion for contempt.

The Court cannot agree with the plaintiffs' characterization of their own motion. Although they ask that the defendants and their attorney be held in contempt, the request is just one sanction sought by the plaintiffs.  The essence of their motion is a request for the production of documents; thus, the motion is a discovery-enforcement motion.  The Court therefore finds that Local Rule 7.2(g) applies to the motion at bar.

The plaintiffs's motion clearly does not comply with Local Rule 7.2(g).  Although the Court takes the requirements of the rule seriously, the motion will not be dismissed solely because it does not comply with the rule.  Given the tenor of the parties' submissions, it is unlikely that a conference would produce much agreement between them.  Moreover, the prompt resolution of this discovery dispute dictates excusing the plaintiffs' failure to comply with the rule.

---

[4]

Paragraph (g) provides, in part, the following:

"(g) All motions to compel discovery and all other discovery-enforcement motions and all motions for protective orders shall contain a statement by the moving party that the parties have conferred in good faith on the specific issue or issues in dispute and that they are not able to resolve their disagreement without the intervention of the Court.  If any such motion lacks such a statement, that motion may be dismissed summarily for failure to comply with this rule. ..."

B. The "oral directive." As a second preliminary matter, the plaintiffs maintain that the defendants failed to comply with an "oral directive" made by Judge Jones during a March 11, 2010, hearing. The defendants maintain, in response, that there is no basis for the contention. The Court has reviewed the pleadings and exhibits submitted by the parties and is satisfied that Judge Jones' April 16, 2010, order memorializes all of his findings and conclusions. The Court will therefore limit the review of his findings and conclusions to the four corners of his order.

C. The Price's Utility Contractors, Inc., Retirement Plan.[5] The plaintiffs correctly note that Judge Jones ordered the defendants to produce five different groups of documents with regard to the Price's Utility Contractors, Inc., Retirement Plan. Which group of documents the defendants allegedly failed to produce is not clear as the plaintiffs' pleadings are not a model of clarity. For example, their pleadings at times appear to confuse the Price's Utility Contractors, Inc., Retirement Plan and the Bud Price's Excavating Service, Inc., Retirement Plan, which the Court understands to be two separate plans. If they are one and the same plan, or one plan grew out of the other, that fact has not been clearly made known to the Court. Notwithstanding the foregoing, the Court will attempt to identify the documents allegedly not provided.

---

[5]

Because there are now two different retirement plans in the proceeding at bar, i.e., the Price's Utility Contractors, Inc., Retirement Plan; and the Bud Price's Excavating Service, Inc., Retirement Plan, the Court will no longer refer to the former plan as simply the "Retirement Plan." Instead, the Court will refer to it by the name alleged by the plaintiffs, that being, the Price's Utility Contractors, Inc., Retirement Plan.

Judge Jones ordered the defendants to produce a copy of the adoption agreement. The plaintiffs' position with regard to whether the defendants complied with that portion of his order is confusing. At one turn, the plaintiffs maintain that the defendants provided one dated in 2008 and "nothing else." See Document 308 at 3. In the very next paragraph of their motion, though, they represent the following:

> [The] defendants converted the Price's Utility Contractor's, Inc., Retirement Plan [PUCRP] to a money purchase plan, a type of defined contribution plan. [The] defendants did this conversion effective January 1, 2007 and failed to provide a single document for the money purchase plan created January 1, 2007. <u>Restated, the adoption agreement was provided</u> and there were two unnamed money purchase plans (Plan B and C) but Ms. Price could not or refused to identify either B or C as being the new Price's Utility Contractors, Inc., Retirement Plan. ...

See Document 308 at 3. [Emphasis added]. The defendants, in response, maintain that they have produced several adoption agreements and support their assertion with two exhibits. Having reviewed the record, it appears that the defendants have produced one or more adoption agreements, although it is possible that there has been some duplication. Without knowing which adoption agreement has still not been produced, it is impossible for the Court to order its disclosure. Thus, the Court at this time will not compel the production of any specific document related to this matter. The defendants are reminded, though, of Judge Jones' order to produce a copy of the adoption agreement. If the plaintiffs can <u>briefly</u> but <u>specifically</u> identify such a document that the defendants have not produced, the Court may re-consider this ruling.

Judge Jones also ordered the defendants to produce any document that reflects the correct percentage to be used in the formula.   The plaintiffs maintain that the defendants have not produced "the document showing what they believe to be the correct percentage to be used under either defined benefit plan."   <u>See</u> Document 308 at 9.   The plaintiffs failed, however, to specifically identify what document will disclose that information.   They make mention of "1997-2005 or so PUC Forms 5500" and "special consent memorandums for PUC," <u>see</u> Document 308 at 9, but the Court has no idea what those documents are, what information they contain, or what document contains the information the plaintiffs require.   Given their lack of clarity, the Court at this time will not compel the production of any specific document related to this matter.   The defendants are reminded, though, of Judge Jones' order to produce any document that reflects the correct percentage to be used in the formula.   If the plaintiffs can <u>briefly</u> but <u>specifically</u> identify such a document that the defendants have not produced, the Court may re-consider this ruling.

Judge Jones also ordered the defendants to produce any document that reflects what percentage Turpin used in his calculations.   With regard to those documents, the plaintiffs allege the following:

> The [d]efendants put in a four page 'summary' on Turpin letterhead last November and the 'special consent memorandum' with the varying percentages were in the November disclosures.   There is nothing from … Turpin as to how he arrived at his percentage.

<u>See</u> Document 308 at 9.   The Court has no idea what those documents are, what information they contain, or what document contains the information the plaintiffs require.   Given their lack of clarity, the Court at this time will not compel the production of any specific document related to this matter.   The defendants are reminded, though, of Judge Jones' order to produce any document that reflects what percentage Turpin used in his calculations.   If the plaintiffs can <u>briefly</u> but <u>specifically</u> identify such a document that the defendants have not produced, the Court may re-consider this ruling.

Judge Jones also ordered the defendants to produce any missing W-2s.   The plaintiffs' position with regard to whether the defendants complied with that portion of his order is confusing.   The plaintiffs maintain that "W-2s were missing for 1983 through 1991 and then for 1995-1998," and that "[t]here were computer printouts that had what looked like W-2-type information on them for 1995-January/February 1998."   <u>See</u> Document 308 at 8.   The Court confesses considerable difficulty determining which missing W-2s relate to which of the two retirement plans now at issue in this proceeding. Given the plaintiffs' lack of clarity, the Court at this time will not compel the production of any specific document related to this matter.   The defendants are reminded, though, of Judge Jones' order to produce any missing W-2s.   If the plaintiffs can <u>briefly</u> but <u>specifically</u> identify such a document that the defendants have not produced, the Court may re-consider this ruling.

Judge Jones also ordered the defendants to produce any document supporting their position regarding any dispute as to the number of years worked by the plaintiffs. Although it is not clear that such a dispute exists, the plaintiffs maintain that the defendants failed to produce employment records for the period from "November 1, 1989, [through] October [of] 1994." See Document 308 at 8.   The defendants do not appear to have specifically addressed the foregoing assertion, save their contention that they have produced all documents.  In light of their lack of a response, the Court has no idea whether they have fully complied with that portion of Judge Jones' order.   The Court therefore orders the defendants to either: (1) identify documents they have already produced that show which of the plaintiffs were employed by them for the period from November 1, 1989, through October 1, 1994; or (2) produce the documents that comply with that portion of Judge Jones' order.  If the documents do not exist, the defendants should specifically state.  They are given up to, and including, July 27, 2010, to identify or produce the documents to the plaintiffs and to notify the Court.

D. Bud Price's Excavating Service, Inc., Profit-Sharing Plan.  The plaintiffs correctly note that Judge Jones ordered the defendants to produce six different groups of documents with regard to the Bud Price's Excavating Service, Inc., Profit-Sharing Plan. Which group of documents the defendants allegedly failed to produce is not clear as the Court again notes that the plaintiffs' pleadings are not a model of clarity.  Nevertheless, the Court will attempt to identify the documents allegedly not provided.

-13-

Judge Jones ordered the defendants to produce profit-sharing plan documents, including the summary plan description dating back to 1974.  The plaintiffs maintain that the defendants have not fully produced those documents, specifically alleging the following:

> All that have been provided were a total of four and they were for recent years.  One was dated November 1, 2008, another dated November 1, 2006, one that was prior to 2005 as it lists [a former attorney] on it and he went to prison about that time and another that was post-2002 as it says the most recent amendment was in November of 2002.

See Document 308 at 3.  The defendants, in response, maintain that they have produced several profit-sharing plan documents, including several summary plan descriptions, and support their assertion with two exhibits.  Having reviewed the record, it appears that the defendants have produced one or more summary plan descriptions for the profit-sharing plan, although it is possible that there has been some duplication.  Without knowing which adoption agreement has still not been produced, it is impossible for the Court to order its disclosure.  Thus, the Court at this time will not compel the production of any specific document related to this matter.  The defendants are reminded, though, of Judge Jones' order to produce profit-sharing plan documents, including the summary plan description dating back to 1974.  If the plaintiffs can briefly but specifically identify such a document that the defendants have not produced, the Court may re-consider this ruling.

Judge Jones also ordered the defendants to produce payroll information for the entire company dating back to 1974.  The plaintiffs maintain that the defendants have not fully produced that information, specifically alleging the following:

> The payroll provided went from July 19, 1979 through October 1989 although most of the 1988-89 payroll was so faint, it cannot be read.  Some of the 1989 payroll is missing and there is a payroll "register" with no date on it.  There was no payroll provided after October 1989.  [The] [d]efendants put in W-2s for some years as the Court directed for the two defined benefit plans but W-2s do not show the hours worked as a payroll would.

See Document 308 at 3.  The defendants have not specifically addressed the foregoing assertion, save their contention that they have produced all documents.  In light of their lack of a response, the Court has no idea whether they have fully complied with that portion of Judge Jones' order.[6]  The Court therefore orders the defendants to either: (1) identify documents they have already produced that contain payroll information for the entire company dating back to 1974, or (2) produce the documents that comply with that portion of Judge Jones' order.  If the documents do not exist, the defendants should specifically state.  They are given up to, and including, July 27, 2010, to identify or produce the documents to the plaintiffs and to notify the Court.

---

[6] At first blush, it appears that the defendants have not fully complied with that portion of Judge Jones' order.  Accepting the truth of the plaintiffs' representation, the earliest payroll information they received was from 1979 and the latest payroll information they received was from October of 1989.  It is possible that the pre-1979 and post-October of 1989 information does not exist, but if it does not, the defendants should specifically make that known.

Judge Jones also ordered the defendants to produce assets and historical transactions dating back to 1974 concerning any assets of the plan, including financial statements of the accounts in which the funds for the plan had been held, interest income, and trust statements reflecting income and losses.  The plaintiffs maintain that the defendants have not fully produced those documents.[7]  The defendants have not specifically addressed the foregoing assertion, save their contention that they have produced all documents.  In light of their lack of a response, the Court has no idea whether they have fully complied with that portion of Judge Jones' order.  The Court therefore orders the defendants to either: (1) identify documents they have already produced that contain the information dating back to 1974, or (2) produce the documents that comply with that portion of Judge Jones' order.  If the documents do not exist, the defendants should specifically state.  They are given up to, and including, July 27, 2010, to identify or produce the documents to the plaintiffs and to notify the Court.

Judge Jones also ordered the defendants to produce any loan documents involving the plan.  The plaintiffs maintain that the defendants have not fully produced those documents, specifically noting the following: "Ms. Price testified at her deposition that there were never loans even though the 1998 Form 5500 for the profit sharing plan showed a mortgage of $123,569 held by the plan.  No loan documents were provided."

---

[7]

A concise summary of the plaintiffs' position is not easy.  The upshot of their position is simply that they have received only bits and pieces of what they believe they are entitled to receive.  See Document 308 at 4-7.

See Document 308 at 7.  The defendants, in response, maintain that no loans were made and, thus, there are no loan documents to provide.  Although there may be a simple explanation for the foregoing discrepancy, but the Court is not aware of it.  The defendants are therefore given up to, and including, July 27, 2010, to explain the discrepancy between their position and that of the plaintiffs.

Judge Jones also ordered the defendants to produce any document reflecting plan expenses.  The plaintiffs maintain that the defendants have not fully produced those documents, specifically noting that "[the] defendants did not provide any documents relating to plan expenses except for a list of 'actions' showing that $3,397.05 was paid at intervals to someone for a 'management fee.'"  See Document 308 at 7.  The defendants, in response, maintain that "[a]s the plaintiffs are aware, almost all expenses were paid by the corporate defendants, not from the plan funds, and the allegations about missing plan expenses is meritless."  See Document 311 at 3.  They additionally maintain that "[i]nformation pertaining to plan expenses that were paid by the plans has been provided."  See Document 311 at 3.  In light of the defendants' response, the Court at this time will not compel the production of any specific document related to this matter.  The defendants are reminded, though, of Judge Jones' order to produce any document reflecting plan expenses.  If the plaintiffs can briefly but specifically identify such a document that the defendants have not produced, the Court will re-consider this ruling.

Judge Jones also ordered the defendants to produce documentation of prior distributions.  The plaintiffs maintain that the defendants have not fully produced those documents, specifically noting the following:

> [The] defendants provided some distribution letters but unless it was for a plaintiff, the names were redacted.  The Court ordered redaction only for the payroll.  There were a small number of 1099-Rs provided, also redacted.  Plaintiff Milner's and Plaintiff Daniel Stripling's distribution letters and those for the Prices were missing.

See Document 308 at 7.  The defendants, in response, maintain that "information relating to persons who are not parties to this action was redacted as permitted by court order, and none of that information is needed by the plaintiffs to verify their benefits …"  See Document 311 at 3.  The Court is in agreement with the defendants as to the redaction of the names of non-parties.  They have not, however, specifically addressed the plaintiffs' assertion that distribution letters for James Milner, Daniel Stripling, Elbert Price, and Mary Ruth Price have not been produced.  In light of the lack of a response, the Court has no idea whether they have fully complied with that portion of Judge Jones' order.  The Court therefore orders the defendants to either: (1) identify documents they have already produced that contain the distribution letters, or (2) produce the documents that comply with that portion of Judge Jones' order.  If the documents do not exist, the defendants should specifically state.  They are given up to, and including, July 27, 2010, to identify or produce the documents to the plaintiffs and to notify the Court.

E. <u>Bud Price's Excavating Service, Inc., Retirement Plan</u>.  The plaintiffs maintain that the defendants failed to produce documents associated with Bud Price's Excavating Service, Inc., Retirement Plan or, if the plaintiffs did so, their production was inadequate.  Documents relating to that plan, though, were not within the scope of Judge Jones' order as the plan was joined after his order.  For that reason, the Court will not address the defendants' production of document relating to that plan.[8]

F. <u>The six unnamed plans</u>.  The plaintiffs maintain that the defendants failed to produce documents associated with the six unnamed plans.  The plaintiffs have not identified the plans, and the Court has no idea what they might be.  In addition, documents relating to the plans were not within the scope of Judge Jones' order as they were joined after his order.  For those reasons, the Court will not address the defendants' production of document relating to those plans.

G. <u>Sanctions</u>.  The plaintiffs have requested several sanctions for the defendants' non-compliance with Judge Jones' order, including a rather bizarre request that the defendants and their attorney be incarcerated until all discovery is produced.  The Court will not order any sanctions at this time.  Although it is possible that the defendants' compliance was not full, it is also possible that a plausible explanation exists for their limited non-compliance.

---

[8]    As noted above, the Court understands the Price's Utility Contractors, Inc., Retirement Plan and the Bud Price's Excavating Service, Inc., Retirement Plan to be two separate plans.  If they are one and the same plan, or one plan grew out of the other, that fact has not been clearly made known to the Court.

**SUMMARY**.  The plaintiffs' motion is denied in part and granted in part.  See Document 307-1.  It is denied in all respects, save the following:

A. With regard to the Price's Utility Contractors, Inc., Retirement Plan, the defendants shall either: (1) identify documents they have already produced that show which of the plaintiffs were employed by them for the period from November 1, 1989, through October 1, 1994; or (2) produce the documents that comply with that portion of Judge Jones' order.  They are given up to, and including, July 27, 2010, to identify or produce the documents to the plaintiffs and to notify the Court.

B. With regard to the Bud Price's Excavating Service, Inc., Profit-Sharing Plan, the defendants shall either: (1) identify documents they have already produced that contain payroll information for the entire company dating back to 1974, or (2) produce the documents that comply with that portion of Judge Jones' order.  They are given up to, and including, July 27, 2010, to identify or produce the documents to the plaintiffs and to notify the Court.

C. With regard to the Bud Price's Excavating Service, Inc., Profit-Sharing Plan, the defendants shall either: (1) identify documents they have already produced that contain assets and historical transactions dating back to 1974 concerning any assets of the plan, or (2) produce the documents that comply with that portion of Judge Jones' order.  They are given up to, and including, July 27, 2010, to identify or produce the documents to the plaintiffs and to notify the Court.

D. With regard to the Bud Price's Excavating Service, Inc., Profit-Sharing Plan, the defendants shall explain the discrepancy between their assertion that no loans were made and the plaintiffs' assertion that "the 1998 Form 5500 for the [Bud Price's Excavating Service, Inc., Profit-Sharing Plan] showed a mortgage of $123,569 held by the plan. See Document 308 at 7. The defendants are given up to, and including, July 27, 2010, to explain the discrepancy.

E. With regard to the Bud Price's Excavating Service, Inc., Profit-Sharing Plan, the defendants shall either: (1) identify documents they have already produced that contain distribution letters for James Milner, Daniel Stripling, Elbert Price, and Mary Ruth Price; or (2) produce the documents that comply with that portion of Judge Jones' order. They are given up to, and including, July 27, 2010, to identify or produce the documents to the plaintiffs and to notify the Court.

IT IS SO ORDERED this ___14___ day of July, 2010.


_____
UNITED STATES MAGISTRATE JUDGE